DAVID STEWART, Appellant, *v.* COLLIS P. HUNTINGTON, Impleaded, etc., Respondent.

Plaintiff entered into a contract with the defendants for the sale to them of certain shares of stock of a railroad company owned by him, by the terms of which defendants agreed to pay him, on delivery of the shares, a price specified per share, and in case any other person had been or should be paid by or on account of the defendants, or either of them, any higher price per share for any of the stock of said railroad company. that defendants would pay to plaintiff on demand, in addition to the amount so to be paid to him on delivery, the difference between that amount and the highest price paid to others, and in case, during or after a contemplated visit of one A. to California, plaintiff should become dissatisfied with the sale, that defendants would, upon demand, return to him the shares of stock so sold and delivered by him, and would consent to the cancellation and rescission of the sale. In an action upon the contract the complaint, after setting forth its terms, alleged the delivery of the stock, its acceptance, and the payment to plaintiff of the price specified; also, that afterwards, and during the visit referred to in the contract, plaintiff became dissatisfied, duly notified the defendants thereof, and demanded the return to him of the stock and the cancellation and rescission of the sale, offering to pay to defendants the amount paid to him on delivery with interest, but that defendants neglected, and refused to return the stock or to cancel the sale. It also alleged that defendants paid to other persons higher prices per share for stock of the same railroad company. *Held*, that the complaint set forth two causes of action, one in affirmance of the contract to recover the additional price agreed to be paid, the other based upon the theory of the rescission of the contract and a refusal of defendants to return the stock which would entitle defendants to recover its value as for a conversion: that said causes of action were inconsistent; and that a decision of the

court on trial requiring the plaintiff to elect as to which cause of action he would rely upon was proper.

Plaintiff elected to rely upon his claim for the higher price alleged to have been paid by defendants to others. To sustain this branch of the case plaintiff gave evidence to the effect that a corporation was organized for the purpose of constructing the railroad in which defendants were the principal stockholders; that certain owners of stock of said railroad company brought actions against said corporation and the defendants and others, to recover moneys belonging to the railroad company alleged to have been misappropriated by the officers of said corporation, and for other relief; that said actions were settled by the construction company; that it paid to one B., who brought one of said actions and who was owner of 200 shares of the railroad stock, the sum of $85,000 in settlement of his suit, it taking a transfer of his stock. It did not appear that in the settlement made anything was said in reference to the amount to be allowed or paid for the stock. *Held*, that this was not a sale within the meaning of the contract; that it contemplated the voluntary purchase of stock by the defendants, and not the amount paid in the compromise of an action, and so, that the evidence furnished no basis upon which a verdict for the plaintiff could have been entered.

(Argued December 9, 1890; decided January 14, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the May term, 1888, which affirmed a judgment entered upon a verdict for the defendant Huntington directed by the court.

The nature of the action and the material facts are stated in the opinion.

*Joseph H. Choate* for appellant. The point upon which the defendant based his motion to direct a verdict for defendant and upon which the General Term relied in its decision, namely, that the contract had been rescinded by the action of the plaintiff in demanding a return of the stock, compliance with which demand was refused by Huntington on the false plea of inability to make a return, was not well taken. (Bishop on Cont. [2d ed.] §§ 812, 820 ; 2 Chitty on Cont. [11th ed.] 1089 ; *Johnston* v. *Trask,* 116 N. Y. 136 ; *Holtz* v. *Schmidt,* 59 id. 253 ; *Melvin* v. *L. Ins. Co.,* 80 Ill. 446 ; *Litchfield* v. *Irvin,*

51 N. Y. 60, 61.) The proper construction of the contract is, that it related in both its branches to the shares of the old company embraced within the issue of $8,500,000 and $20,000,000, and it was the manifest duty of the court to instruct the jury accordingly. (*Groate* v. *Gile*, 51 N. Y. 431; *Dwight* v. *G. L. Ins. Co.*, 103 id. 352; *Short* v. *Woodward*, 13 Gray, 86, 88; *Pratt* v. *Langdon*, 12 Allen, 544, 546; *Globe Works* v. *Wright*, 106 Mass. 207, 216; *Hoffman* v. *A. Ins. Co.*, 32 N. Y. 405; *Murray* v. *Bethune*, 1 Wend. 191; *Stoddard* v. *Ham*, 129 Mass. 383, 385, 386; *Riley* v. *Mayor, etc.*, 96 N. Y. 339.) If there was anything to leave to the jury, or if Huntington had not admitted the subsequent purchase at $400 per share, as a purchase within the meaning of the contract, that fact was fully established by the evidence in regard to the Brannan and Lambard purchases; and that evidence fully establishes a purchase at a higher price within the meaning of the contract, and the General Term was in error in holding the contrary, and in refusing to submit the question to the jury. (*Vandermulen* v. *Vandermulen*, 108 N. Y. 195.)

*James · C. Carter* for respondent. Where by contract a party has an election between rights, the election once exercised is gone forever. (23 Abb. [N. C.] 145; *Garrison* v. *Marie*, 1 How. Pr. [N. S.] 356; *N. Y. F. Ins. Co.* v. *Lawrence*, 14 Johns. 55; *Morrell* v. *I. F. Ins. Co.*, 33 N. Y. 448, 449, 451; *Dinsmore* v. *Duncan*, 57 id. 580; *Wynkoop* v. *N. F. Ins. Co.*, 91 id. 478; *Andrews* v. *Æ. Ins. Co.*, 92 id. 596; *Layton* v. *Pearce*, Doug. 15; *Brown* v. *Slee*, 103 U. S. 836; *Jones* v. *Carter*, 15 M. & W. 718; *Dendy* v. *Nicholl*, 4 C. B. N. S. 376; *Grimwood* v. *Moss*, L. R. [7 C. P.] 366; *Doer* v. *Birch*, 1 M. & W. 406; *Brown* v. *R. Ins. Co.*, 1 E. & E. 853; *Kennedy* v. *Mills*, 13 Wend. 553.) Plaintiff's contention that the exercise of the election did not rescind the sale unless Huntington should comply with the demand and return the stock is erroneous. (*Morrell* v. *I. F. Ins. Co.*, 33 N. Y. 429.)

HAIGHT, J.    This action was brought against Collis P. Huntington, Leland Stanford and Charles Crocker, as survivors of Mark Hopkins, deceased.    None of the defendants except Huntington were served with summons or complaint, and none of the other defendants have appeared in the action.    The case has been three times tried.    The first resulted in a disagreement of the jury; the second in a verdict for the plaintiff for $102,923.82, on which a judgment was entered which was reversed by the General Term, and the third in a direction of a verdict for the defendant by the court, which is the one now under review.

This action was brought upon an alleged breach of contract on the sale of stock, and for balance of the purchase-price claimed to be due and unpaid.    On or about the 21st day of April, 1870, the plaintiff was the owner and holder of 200 shares of the capital stock of the Central Pacific Railroad Company.    On or about that day he entered into a contract with the defendants for the sale to them of the stock, the terms of which, as alleged in the complaint, are as follows, that is to say : " That upon the delivery of such shares of stock to the defendants, or to such persons or parties as the said defendants, through the said Collis P. Huntington, should direct, said defendants would pay to the plaintiff a sum equal to one hundred dollars, with interest thereon, at seven per cent per annum, from the first day of September, 1864, upon each share so delivered; that in case any person or party other than the plaintiff had been or should be paid by or for account of the defendants, or either or any of them, or said Central Pacific Railroad Company, any higher price per share for any share or shares of stock of said railroad company, than the price per share so to be paid to the plaintiff on the delivery of his stock, then and in that case the defendants would pay to the plaintiff on demand, in addition to the amount so to be paid to him on the delivery of such shares of stock, the difference between the amount so paid to him on the delivery thereof and the value of such two hundred shares of stock at the highest price per share paid by or for account of the defendants, or either or

any of them, or said railroad company, to any person or party other than the plaintiff for any share or shares of stock of said railroad company; and that in case, during or after the then contemplated visit to California of William H. Aspinwall (who had also sold certain shares of stock of said railway company to the defendants upon the like terms), the plaintiff should become or be dissatisfied with such sale of his said stock to the defendants, the defendants would, upon demand, return to the plaintiff the shares of stock so sold and delivered by him as aforesaid, and would consent to the cancellation and rescission of the said sale."

The complaint further alleges, in substance, that, under and in pursuance of the contract, the plaintiff was directed by the defendant Huntington to deliver the stock to the firm of Fisk & Hatch, who were doing business in the city of New York; that he did, pursuant to such directions, deliver the stock to that firm, who accepted the same and paid the plaintiff therefor $100 per share, with interest thereon from the 1st day of September, 1864, as per the agreement; that afterwards and during the visit of William H. Aspinwall to California, the plaintiff became and was dissatisfied with such sale of his stock to the defendants, and duly notified the defendants thereof, and demanded the return to him of the stock so sold and delivered to the defendants, and the cancellation and rescission of the said sale, and offered to pay to the defendants the amount so paid to him on the delivery of the stock, with lawful interest thereon, but the defendants wholly neglected and refused to return such stock or any part thereof, or to consent to the cancellation and rescission of the sale.

It also alleges that there were paid by or for account of the defendants to other persons, higher prices per share for stock of the said railroad company than the price paid to the plaintiff by the defendants; that they purchased stock of one Charles A. Lombard, to whom they paid at the rate of $400 per share, or thereabouts.

The testimony given on behalf of the plaintiff in substance supports the allegation of the complaint. The plaintiff, in

speaking in reference to the contemplated visit of Mr. Aspinwall to California, asked the defendant to leave the matter open until Mr. Aspinwall had been there, and could look the matter over and decide whether they had better sell or not; that Mr. Huntington replied to the effect that he could not leave the option open, but stated that "if Mr. Aspinwall is not satisfied with the sale when he gets out there, I will return your stock, and you can pay back the money that you get." The plaintiff further testified that he then asked him : " Will you agree that we shall receive as much for our stock as you pay to anybody else ? He said : ' Yes; I will agree to that.' Then Mr. Aspinwall or myself said to him : ' We will agree, then, to your proposition, that you buy our stock and pay us par and interest from 1864.' " He further testified to the effect that Huntington made some representations to the effect that there was trouble in the company in California over the issue of stock; that he had it in his power to get his friends out, and that he wanted the plaintiff to sell his stock to him, so that he could save him from being annoyed with the troubles of the company, etc.

But the action is not based upon a fraud, and could hardly be sustained if it had been, for, under the liberal provisions of the contract alleged, the plaintiff was given ample time in which to investigate the facts in relation to the condition of the company and the value of the stock, and then, if dissatisfied, to rescind and annul the sale. Much discussion has taken place upon the argument of this case and in the courts below, in reference to the election of the plaintiff to rescind the contract of sale. Under the agreement the plaintiff was given the right to rescind and have the contract canceled "during or after the then contemplated visit to California of William H. Aspinwall." The precise time in which this election was to be made is not stated, but the reference to the time of his visit to California as a time in which the election could be made, would seem to indicate that it was the contemplation of the parties that it should be speedily made after he had had an opportunity to investigate the affairs of the company and

determine as to the value of its stock, and it was doubtless his duty to exercise his option within a reasonable time thereafter. This action was not brought until nearly six years thereafter, and consequently the election to rescind, if made, must have been made long before its commencement, in order to be within the reasonable time allowed. We are, however, not left in doubt as to the facts bearing upon this question, or even as to whether there was an election by the plaintiff to rescind. That he did so rescind is alleged in the complaint, and is testified to by him, and it is not controverted by the defendant. The plaintiff says he received a telegram from Aspinwall, while he was still in California, in which it was stated that they had made a mistake in selling the stock, and that thereupon he immediately went to Huntington, offered to pay back the money received, and demanded the return of the stock. The defendant neglected and refused to return it, and by so doing, committed a breach of the agreement. Whilst the election of the plaintiff was complete and made within the time allowed, it is claimed that he is not bound thereby for the reason that the defendant refused to surrender the stock, and thereby violated his agreement, and that he cannot be permitted to avail himself of his own misconduct in order to hold the plaintiff to his election. We shall assume this to be so, for the purposes of this case, without stopping to consider or decide the question, for under the view entertained by us, it is not essential in the determination of the case.

Upon the trial the case proceeded upon both claims, and evidence was taken upon each cause of action alleged until the plaintiff rested, at which time the defendant called upon him to elect as to which cause of action he would rely upon. This the plaintiff objected to doing, and thereupon the court ruled and required him to make such election, whereupon, after first taking an exception to such ruling, he elected to rely upon his claim for the higher price alleged to have been paid to others by the defendant for stock of the company. Of this ruling complaint is now made, and in order for us to

determine whether or not the plaintiff has suffered in conse-- quence thereof, it becomes important for us to first ascertain the precise nature of the causes of action alleged in the complaint.

As we have seen, it is first alleged that it was agreed between the parties that in case any person or party other than the plaintiff had been or should be paid by or for account of the defendants or either or any of them, any higher price per share for any shares of the stock than the price paid to the plaintiff, then, and in that case, the defendants would pay to the plaintiff such additional sum. This allegation in effect makes the additional sum so agreed to be paid, if paid to others, a part of the purchase-price, and the action, therefore, would be upon the contract of sale for the balance of the pur- chase-money due and unpaid. It would be an action in affirm- ance of the contract.

The other allegation is to the effect that if, during or after the contemplated visit to California of Aspinwall, the plaintiff should become dissatisfied with such sale, the defendants would, upon demand, return to him the stock so sold, and would con- sent to the cancellation and rescission of the sale. That he did become dissatisfied during the visit of Aspinwall to Cali- fornia, and did demand of the defendants a return of the stock, and that the sale be rescinded, etc., and the defendants refused to return to him the stock or consent that the sale be canceled or rescinded.

The action under this clause of the complaint would have to proceed upon the theory that the contract had been rescinded and annulled, and the recovery would have to be for the value of the stock. It is said that the action would be upon a breach of the contract by the defendant. Very true, but what was the breach? It was a refusal to return the stock to the plain- tiff when he exercised the option given him by the contract to rescind.

The appellant says, however, that he makes no claim upon the ground of conversion; that his claim is founded upon a breach of the contract in not returning the stock when

demanded, and that because of that breach he is entitled to recover the fullest damages which, by the proofs, he could establish. That if the price paid to other parties exceeded the value of the stock he would be entitled to recover that amount.

We cannot recognize or approve of such a claim. If the plaintiff is entitled to recover on account of a higher price paid to others, it is because there is such a provision in the contract, and the action is maintained thereon to recover the balance due as a part of the purchase-price, and not because of a breach of the contract in refusing to return the stock. If he is entitled to recover because of such breach, it must be for the value of the stock as established by the evidence.

It has also been said that the agreement was in effect that the plaintiff should have the right to buy back or repurchase the stock instead of rescinding and annulling the sale. But we find no such allegation in the complaint, or any support thereof in the evidence. It consequently appears to us that one cause of action is for the value of the stock based upon a rescission of the contract, whilst the other is for a balance of the purchase-price based upon an affirmance of the contract. If this is so the two causes are inconsistent, and he could not be permitted to go to the jury upon both.

The appellant concedes that the contract contains two separate, distinct provisions of such a nature that the performance of either would discharge and satisfy the whole contract, and yet he asks to go to the jury upon both. In case half of the jurors should be of the opinion that he was entitled to recover the value of the stock by reason of the rescission of the contract, and the other half should be of the opinion that he was entitled to recover for balance of purchase-price because of paying a higher price to others, there would still be a verdict in his favor. A bare statement of the facts demonstrates the wisdom of the rule that prohibits a party from going to the jury upon inconsistent claims.

One of the judges below, in his opinion, says that that court, on a former review of the case in the General Term, said that it was then held that the plaintiff's action was limited to the

right to recover damages for the refusal to return the stock, and that there was consequently no reason for the trial court in this case to require an election as to the cause upon which the plaintiff would place his right to recover after he had been so restricted by the decision of the General Term. We do not, however, understand that any such restriction was made by the General Term on that review. No evidence thereof appears in the case other than is disclosed from the opinions of the judges written upon that review.

In the chief opinion written in the case the position was taken that the plaintiff had elected to rescind the sale, that he was bound by it, and consequently could not maintain an action upon the contract for the higher price paid to others. This view, however, was not concurred in. Another judge, favoring a reversal upon the ground that the evidence upon which the plaintiff had recovered damages, failed to support the verdict. The other member of the court concurred in the result, specifying no ground, so that we do not understand that it was then determined that the election of the plaintiff was final and binding upon him, and that the defendant could avail himself thereof. The one question upon which the judges writing in that case did agree was that the evidence was insufficient to sustain the verdict, which was based upon the contract for the higher price paid to others. But the agreeing upon this point did not authorize that court in granting a new trial to limit or restrict the plaintiff to his other cause of action. He had the right to bring other witnesses to produce evidence which would sustain a verdict by showing other sales at a higher price to other parties.

It is said that the court should have restricted the plaintiff to his claim for damages by reason of the refusal of the defendant to return the stock. In other words, that the trial court should have elected for the plaintiff as to which cause of action he should proceed upon. We do not understand, however, that such a duty devolves upon the court, or could properly be exercised by it. The right to elect rests with the party, and cannot be taken from him.

That the causes of action are inconsistent, and that an election should be made, has been held upon each trial of the action, and we think the same has been properly approved of by the General Term.

It remains to be seen whether there is any evidence that the defendant had paid others a higher price for the stock than that paid to the plaintiff. The evidence relied upon to sustain this branch of the case pertains to the transactions of the Contract and Finance Company, of which the defendants were the principal stockholders, which company had been incorporated under the laws of California, for the construction of the Central Pacific railroad. It appears that one Lombard, who was the owner and had control of a block of the stock, commenced or was about to commence an action against the Contract and Finance Company, the defendants individually, and others; that one John B. Felton was his attorney; that he had prepared the complaint in the action and showed it to the president of the corporation, in which complaint he had alleged numerous appropriations of money belonging to the Central Pacific Railroad Company by the officers of the Contract and Finance Company, amounting to upwards of fifty millions of dollars. The relief prayed for in part was, that a receiver be appointed of the Central Pacific Railroad Company and of the branches thereof, that the defendants be restrained and enjoined from acting as members of the board of directors of that company, or from voting at any meeting of stockholders upon any of its stock; and that they also be restrained and enjoined from selling, transferring, pledging or otherwise disposing of any of the stock of the said company, etc.; that an accounting be had of the actual cost of the building and equipment of the Central Pacific railroad and of the telegraph line, and of the receipts and income thereof from the time the same commenced running to the time of the appointment of the receiver; that an account also be taken of the disposition of all of the stock and bonds of the company, of the bonds issued by the United States in aid of such company, of bonds issued by the city and county of San Francisco and other municipali-

ties, of moneys received from the state of California, from private subscription, from the sale of lands and all other sources; and that they be adjudged to surrender to the Central Pacific Railroad Company all the bonds of the United States and of the said Central Pacific Company, and all of the stock of the said company held by them or either of them; that they be adjudged to pay into the treasury of the company the sum of fifty millions of dollars, and for such other and further relief as shall be equitable. It also appears that at this time the defendants were endeavoring to reorganize the railroad company and to negotiate the sale of a large amount of the stock; that they feared that the bringing of the suit would impair the credit of the company and interfere with their contemplated reorganization; that thereupon negotiations were had for a settlement, which finally resulted in the Contract and Finance Company paying to Felton, the attorney, the sum of ninety thousand dollars, and to Lombard the sum of one hundred and ninety thousand dollars, Lombard transferring his stock to the Contract and Finance Company, and Felton agreeing that he would not bring any other like action against the defendants. It also appears that about a month thereafter another action of the same character, with similar allegations, was brought by one Brannan, who was the owner of two hundred shares of the stock of the Central Pacific Company, and that this action was also finally settled by the Contract and Finance Company by its taking a transfer of the stock and paying the sum of eighty-five thousand dollars. In the settlement made, there does not appear to have been anything said in reference to the amount that should be allowed or paid for the stock; in each case a gross sum was agreed upon to be paid in settlement of the action, which embraced a transfer of the stock to the Contract and Finance Company. Stanford the president of the company, in his testimony, states that he regarded the suits as an attempt to blackmail; that he believed the parties were aware that they were negotiating for a large amount of money, and that they thought, under the circumstances, that they could interfere with the negotiations. But, whether the

actions were for blackmail or not, it does not change the facts in reference to the settlements, and it is quite evident, from the undisputed evidence upon the subject, that the defendants, through the Contract and Finance Company, were induced to pay a large sum in settlement of these cases, in order to prevent the publicity and consequent effects which would of necessity follow upon a contest over the allegations contained in the complaint and of the relief demanded thereon.

The contract, as we have seen, was, that if the defendants should pay any other person a higher price for the stock than was paid the plaintiff, that then they should pay the plaintiff the difference between the amount which he had already received and the higher amount so paid to other persons. This contract contemplates the voluntary purchase of stock by the defendants and not the amounts paid in the compromise of actions of the character described; and, consequently, the evidence in reference to such settlements furnishes no basis upon which a verdict for the plaintiff could have been rendered.

The witness Aspinwall gave evidence to the effect that the defendant Huntington had stated to him that they had paid four hundred dollars a share for the stock, but it also sufficiently appears that at the time this statement was made, Huntington was speaking of the compromise of the actions to which we have already referred, and it consequently can have no other effect than that given to the settlements of those cases.

These views render it unnecessary to consider the other questions involved in the case.

The judgment should be affirmed, with costs.

All concur, except VANN, J., dissenting.

Judgment affirmed.